IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NATHANIEL NEILL AND ALICIA NEILL<br>    Plaintiffs, | §<br>§<br>§ | |
| v. | § | CASE NO. CIV-13-627-D |
| | § | |
| STATE FARM FIRE AND CASUALTY<br>COMPANY, a corporation, and<br>JACK STOUT, an individual,<br>COMPANY, | §<br>§<br>§<br>§ | |
| Defendants. | § | JURY DEMANDED |

### DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
### NOTICE OF REMOVAL

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

PLEASE TAKE NOTICE that Defendant, State Farm Fire and Casualty Company ("State Farm") hereby files its Notice of Removal ("Notice"). In support hereof, State Farm would respectfully show the Court as follows:

1.   On or about November 28, 2012, Plaintiffs Nathaniel and Alicia Neill filed their Petition ("Complaint") in the matter entitled *Nathaniel Neill and Alicia Neill v. State Farm Fire and Casualty Company and Jack Stout*, Case No. CJ-2012-109, In the District Court of Woodward County, State of Oklahoma. A copy of this Complaint is attached as Exhibit 1 hereto, incorporated herein, and made a part hereof for all purposes.

2.   Summons were issued upon State Farm and Defendant Jack Stout ("Stout") on or about November 28, 2012. Attached hereto as Exhibit 2 is a true and correct copy of the Summons.

3.  Stout consents to this removal through his undersigned counsel. Stout has been fraudulently joined in this case because there is evidence that Plaintiffs' jurisdictional allegations are fraudulent and made in bad faith <u>and</u> that Plaintiffs have no possibility of recovery against Stout, the non-diverse defendant.

## NATURE OF THE SUIT

4.  Plaintiffs' lawsuit arises out of a claim they made under their homeowners insurance policy for structural damage to their home sustained from a tornado on April 15, 2012. Plaintiffs have brought claims against State Farm for breach of contract and breach of the duty of good faith and fair dealing.

5.  Plaintiffs have also brought the following claims against Stout: 1) Negligent Procurement, which they allege occurred by Stout procuring an insurance policy which did not serve to actually replace their home and personal property when their home was destroyed by a covered loss, and procuring a policy which did not accurately reflect the replacement cost of Plaintiffs' dwelling; 2) Constructive Fraud and Negligent Misrepresentation, which they allege occurred by Stout misrepresenting to Plaintiffs the insurance coverage procured; 3) "Negligent Underwriting," which appears to be a restatement of the claims for Negligent Procurement with the added allegation of writing more insurance than Stout considered necessary to cover the replacement cost of Plaintiffs' dwelling; and 4) "Breach of Fiduciary Duty," which contains no individual factual allegations.

## BASIS OF REMOVAL

6. State Farm was and is a corporation organized in Illinois, with its principal place of business in Bloomington, McLean County, Illinois. Defendant Stout is a citizen of Woodward County, Oklahoma, but has been fraudulently joined in this action in order to defeat diversity jurisdiction. Upon information and belief, the Plaintiffs are citizens of Woodward County, Oklahoma.

7. This Court has original jurisdiction over the matters made the basis of this lawsuit pursuant to 28 U.S.C. § 1332 in that (1) the Plaintiffs are Oklahoma citizens; (2) the Plaintiffs are completely diverse from State Farm; (3) the Plaintiffs have fraudulently joined Stout, in that the Plaintiffs have a legally insufficient basis for their claims against this non-diverse Defendant, and; (4) the requisite amount in controversy has been satisfied on the face of Plaintiffs' Complaint.

8. Venue is proper because Woodward County is located within the Western District of Oklahoma. 28 U.S.C. § 1441(a).

9. The amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. As evidentiary support for this allegation, State Farm relies upon Plaintiffs' Complaint, in which Plaintiffs state they are seeking damages in excess of $75,000.00 for each of their causes of action. Exhibit 1.

10. Defendant State Farm filed its Notice of Removal within the 30-day time period required by 28 U.S.C. §1446(b). *See Hornbuckle v. State Farm Lloyds*, 2003 WL 21955864 (N.D. Tex).

11. A defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Defendants can prove fraudulent joinder by showing that either: (1) plaintiff's jurisdictional allegations are fraudulent and made in bad faith; or (2) plaintiff has no possibility of recovery against the non-diverse defendant. *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1279 (N.D. Okla. 2006). If a defendant can show that a non-diverse defendant was fraudulently joined, the parties will be completely diverse and the Court may exercise subject matter jurisdiction over the case. *See American Nat. Bank & Trust Co. of Sapulpa, v. Bic Corp.*, 931 F.2d 1411, 1412 (10th Cir.1991) ("If, as defendant suggests, plaintiffs joined the Oklahoma residents without good faith, defendant may remove on the grounds of fraudulent joinder."). When a defendant raises specific allegations of fraudulent joinder, the Court may pierce the pleadings to evaluate the defendant's argument. *Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 881–82 (10th Cir.1967); *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82, 85 (10th Cir.1964).

12. In this case, there is evidence that Plaintiffs' jurisdictional allegations are fraudulent and made in bad faith <u>and</u> that Plaintiffs have no possibility of recovery against the non-diverse defendant.

13. Plaintiffs' lawsuit is, at most, a breach of contract dispute between State Farm and Plaintiffs – the value of damages to Plaintiffs' home as a result of the storm. To avoid federal court jurisdiction, Plaintiffs attempt to graft extra-contractual claims onto a breach of contract dispute and join as a non-diverse defendant a State Farm insurance sales agent who had no involvement with the Plaintiffs' claim. Plaintiffs' allegations against Stout do not provide a basis in law or fact upon which to assert claims for alleged fraud, failure to procure, etc. His joinder in this lawsuit must be disregarded as sham or improper joinder.

14. On or about May 28, 2013, the depositions of Plaintiffs were held. Plaintiffs' testimony makes clear that the vast bulk (if not the entirety) of the allegations in the Complaint are mere concoctions.

Specifically, Mr. Neill testified the only time he met with or spoke to Stout regarding the policy made the subject matter of this suit was in 2006 (including regarding the coverage amounts or the premiums). Exhibit 3 at 160-61; 175; 179-80.

At that meeting, he discussed the amounts of coverages on the homeowners policy, but he did not remember the coverage amounts and did not believe any of those amounts had ever changed on the policy. *Id.* at 173-74.

Mr. Neill does not remember if Stout assisted him in filling out the homeowners application. *Id.* at 176.

Mr. Neill does not remember how the coverage amount for the dwelling coverages were determined. *Id.* at 179.

Mr. Neill does not remember where the coverage amounts came from – it was likely from his own appraisal. *Id.* at 179; 185-86. In fact, he had no evidence Stout was the one who actually selected the coverage amounts on his policy. *Id.* at 191.

Mr. Neill claimed his complaints against Stout were that he "should have worked better" to increase the limits on his policy – specifically the dwelling extension. Exhibit 3 at 180-81; 193. However, Mr. Neill testified he had never done any repairs on the property since being paid on the claim, so he did not know whether the limits on the property had even been met. *Id.* at 182.

Further, Mr. Neill testified he had never attempted to increase or decrease the coverage amounts on his policy. *Id.* at 174. He also testified there was nothing preventing him from doing his own research on how much coverage he needed. *Id.* at 185-86. There was nothing preventing him from determining the replacement cost value of his home between 2006 and the time of the tornado. *Id.* at 189. Nothing was preventing him from speaking with Stout had he thought he was paying too much in premiums (in fact, he had no idea what he ever paid in premiums). *Id.* at 188-89.

Mr. Neill testified he was <u>not</u> suing for reasons that the limits on his policy were too high, in direct contravention with Plaintiffs' Original Petition. Exhibit 3 at 182; *compare* Exhibit 1 at 9-10.

Mrs. Neill essentially echoed her husband's statements regarding the allegations. Exhibit 4 at 82 (only one meeting/conversation with Stout about the policy since 2006). She did not remember any discussions with Stout concerning the appropriate amount of coverage or premiums on the policy. *Id.* at 91; 93. She never contacted Stout's office orally or in writing regarding whether the coverages were too high or too low. *Id.* at 92. She confirmed their claims arose out of the dwelling extension coverage being too low. *Id.* at 93-94. She did not have a "single thing" to add to the complaints about Mr. Stout other than what her husband said. *Id.* at 93-95.[1]

Many—if not all—of the claims made against the non-diverse Defendant fail because Plaintiffs cannot establish the necessary elements. In the Complaint, the plaintiff must make at least minimal factual allegations, either direct or inferential, as to every material element of the claim. *Gooley v. Mobil Oil Co.*, 851 F.2d 513, 515 (1st Cir.1988); *Hall v. Bellmon*, 935

---

[1] Q.   And if I were to read to you each individual cause of action, and that's what you're suing on, regarding Mr. Stout in this lawsuit, would you have anything to add other than that complaint that the dwelling extension coverage was not high enough to get the work done that needed to be done to the house.
A.   Towards Jack Stout?
Q.   Yes, ma'am.
A.   Just his misrepresentation.
Q.   And what misrepresentation was that?
A.   I'm going to defer to Nathan. . . .

F.2d 1106, 1110 (10th Cir.1991). For example, Plaintiffs' claim for breach of fiduciary duty must fail because Oklahoma does not recognize a fiduciary duty by an insurance agent to an insured. *See Swickey v. Silvey Cos.*, 979 P.2d 266, 269 (Okla. Civ. App. 1999) ("There are no Oklahoma cases holding that an insurance agent owes a fiduciary duty to a prospective insured, or to an established customer with respect to procurement of an additional policy."); *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272 (N.D. Okla. 2006) (finding fraudulent joinder).

Here, the non-diverse Defendant Stout had one meeting with Plaintiffs. That one meeting in 2006 was initiated by Plaintiffs. Plaintiffs had no further contact with Stout regarding their homeowners policy. *See Swickey*, 979 P.2d at 269 (noting that an agent has "a duty to act reasonably, given the specialized knowledge it possessed of the terms and conditions of insurance policies generally[, but,] that specialized knowledge, such as it [is, does] not ... create such a special relation ... as to make [the agent] a fiduciary").

Likewise, their fraud claims do not meet muster under Oklahoma law. The allegations of the Compaint do not, on their face, rise to the level of fraud as required under Oklahoma rules of civil procedure. No allegations have been made that give notice that: (1) a false, material representation was made; (2) when the representation was made or known to be false; (3) where the representation was made; (4) or, importantly, that the representation was made with the intention that the representation should be acted upon by Plaintiffs. 76 O.S.

§ 3; *Steiger v. Commerce Acceptance of Oklahoma City, Inc.*, 455 P.2d 81, 86 (Okla. 1969) (all elements of fraud must be present, absence of any one is fatal to claim).

Any claims Plaintiffs might have against Stout are time barred. Thus, the "beyond the pleadings" evidence clearly establishes Plaintiffs' claims neither match their pleadings (demonstrating bad faith), nor evince any legitimate cause of action (demonstrating no possibility of recovery). The only representations about the policy allegedly made by Stout to the Plaintiffs occurred on or about October 2006, at least five years before their tornado loss. Exhibit 1 at 2; Exhibit 5 (policy inception documentation). At or around 2012 — more than 5 years after the policy issued – Plaintiffs began to question the terms of the policy (specifically, the coverage amounts). Plaintiffs did not file suit until November 28, 2012.

Plaintiffs' claims against Stout expired after two years.[2] In the case of fraud, the limitations period may be tolled "until the fraud is discovered or until the date the defrauded party, by the exercise of ordinary diligence, might have recognized the deception." *Smith v. Baptist Found. of Okla.*, 50 P.3d 1132, 1137–38 (Okla.2002). Here, the misrepresentations Plaintiffs complain of "could reasonably have been discovered . . . after delivery of the policy." *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1283 (N.D. Okla. 2006) (quoting *Cole v. Equitable Life Assur. Soc'y of the U.S.*, 271 A.D.2d 271, 707 N.Y.S.2d 56, 56–57 (2000)); *see also* In re *Northwestern Mut. Life Ins. Co. Sales Practices*

---

[2] Plaintiffs' claims for breach of fiduciary duty, constructive fraud, negligent misrepresentation, negligent procurement and underwriting, are all subject to a two-year statute of limitations. 12 Okla. Stat. § 95.

*Litig.*, 70 F. Supp.2d 466, 484–85, 490, 494 (D.N.J.1999) (statute of limitations starts to run when a plaintiff receives documents that contradict the alleged misrepresentations, and that "the policies by themselves . . . should have provoked inquiry . . . leading to discovery of the alleged fraud"); *Thelen v. Mass. Mut. Life Ins. Co.*, 111 F. Supp. 2d 688, 693 (D. Md. 2000) (holding that the statute of limitations starts to run at the time the policy is issued and that to find otherwise would reward plaintiffs for their own delay); *Matter of Woodward*, 549 P.2d 1207, 1209 (Okla.1976) (holding the "party defrauded will be deemed to have had notice of fraud from date means of discovering such fraud came into his hands and fraud will be deemed to have been discovered upon that date").

The evidence in this case demonstrates not only were Plaintiffs on notice as to their coverage amounts, but there was nothing stopping them from making independent determinations as to whether they needed to be higher or lower. In fact, the evidence demonstrates it was Plaintiffs' own appraisal that determined the coverage amounts, and no evidence existed otherwise. As noted by the Court in *Slover*, "where, as here, a plaintiff 'refrain[s] from the pursuit of inquiries plainly suggested by the facts,' such plaintiff 'may not benefit from a rule tolling the applicable statute of limitations.'" *Slover*, 443 F. Supp. 2d at 1283 (quoting *Smith*, 50 P.3d at 1140). In this case, as in *Slover*, by logical extension of the Court's reasoning, all of Plaintiffs' claims against Stout are time-barred.

It is well established under Oklahoma law that insureds have a duty "to examine, read, and know the contents of the policy before accepting and paying the premium therefor, and,

having failed or neglected to do so[, they are] estopped from denying knowledge of its terms or conditions." *Liverpool & L. & G. Ins. Co. v. T.M. Richardson Lumber Co.*, 69 P. 936, 937 (1902). Plaintiffs received the policy at issue here on or about October 2006 and could have rejected, amended, or modified it if it did not meet their expectations. Plaintiffs do not alleged that they were "tricked" into not reading the policy or had no access to the coverage amounts they accepted with their purchase. Rather, Plaintiffs elected to keep the policy, and are therefore deemed to have been on notice of the policy's terms since October 2006. Thus, all the statute of limitations applicable here would have expired in October 2008.

Plaintiffs cannot prevail against Stout on the underlying claims. Oklahoma law does recognize "a duty on the part of [the agent] to exercise reasonable care and skill in performing its tasks, i.e., procuring insurance and making any necessary corrections or adjustments after a policy is issued." *Swickey v. Silvey Companies*, 979 P.2d 266 (Okla. Civ. App. 1999). While "[a]n agent has the duty to act in good faith and use reasonable care, skill and diligence in the procurement of insurance and an agent is liable to the insured if, by the agent's fault, insurance is not procured as promised and the insured suffers a loss," this imposition of tort liability is an exception to the general rule. *Id.* Liability is proper only "[i]f the agent, acting within the scope of his authority, in pursuit of a lawful purpose, steps aside to engage in a tortious act to the injury of property or personal rights of another." *Bane v. Anderson, Bryant & Co.*, 786 P.2d 1230, 1234 (Okla.1989) (internal citations omitted)

From the outset, Plaintiffs' bald assertions in their Complaint offer only a colorable basis for such (and a scant one at that) which necessitated a delving into their claims through deposition. And, as the evidence in this case demonstrates, even if taken in a light most favorable to Plaintiffs, their factual allegations of fraud and negligence are <u>totally</u> lacking: Plaintiffs did not remember the coverage amounts and did not believe any of those amounts had ever changed on the policy. They do not remember if Stout assisted them in filling out the homeowners application. They do not remember how the coverage amount for the dwelling coverages were determined. It was likely from Plaintiffs' own appraisal. Plaintiffs had no evidence Stout was the one who actually selected the coverage amounts on the policy. Plaintiffs had never done any repairs on the property since being paid on the claim, so they did not even know whether the limits on the property had even been met. Plaintiffs had never attempted to increase or decrease the coverage amounts on his policy. There was nothing preventing them from doing their own research on how much coverage they needed. There was nothing preventing them from determining the replacement cost value of his home between 2006 and the time of the tornado. Nothing was preventing him from speaking with Stout had they thought they were paying too much in premiums.[3] The only complaints they had against Stout were that their dwelling extension limits were too low after their tornadic loss, though they had not actually effectuated any repairs on such which would have

---

[3] "Plaintiffs do not allege that the non-diverse Defendant failed to make necessary corrections to the policy, as a claim for negligence would seem to require." *Slover v. Equitable Variable Life Ins. Co.*, 443 F. Supp. 2d 1272, 1281 n.12 (N.D. Okla. 2006).

demonstrated the truth of this fact. They also complained about Stout's "conduct" after their claim, in that he was "too busy" to help them.

The Fifth Circuit confronted similar circumstances in *Griggs v. State Farm Lloyds*, 181 F.3d 694 (5th Cir. 1999), and found that removal was appropriate based on fraudulent joinder. Griggs brought suit against State Farm for its failure to pay insurance benefits under a homeowner's policy. Griggs joined a State Farm agent, Blum, based on allegations that Blum made actionable misrepresentations in violation of the Texas Insurance Code and the Texas Deceptive Trade Practices Act. Griggs argued that his amended petition adequately stated valid causes of action against Blum, pointing out that Texas law requires only notice pleading (which is the case in Oklahoma state court). The Court first declined Griggs' invitation to expand the concept of notice pleading. *Id.* at 699 ("The petition must at least provide sufficient factual information that the defendant is able to prepare a defense."). Griggs then argued that the mere possibility that a claim can be stated against an insurance agent requires the conclusion that he in fact stated a valid claim against Blum. The Fifth Circuit disagreed and stated:

> While the burden of demonstrating fraudulent joinder is a heavy one, we have never held that a particular plaintiff might possibly establish liability by the mere hypothetical possibility that such an action could exist. To the contrary, whether the plaintiff has stated a valid cause of action depends upon and is tied to the factual fit between the plaintiff's allegations and the pleaded theory of recovery.

*Griggs*, 181 F.3d at 701 (emphasis added). The Fifth Circuit then analyzed the specific factual allegations against Blum and found that there was no basis for liability against him.

For example, the Court noted post-claim assurances regarding the progress of the insureds' claims were more in the nature of non-actionable puffery than actionable representations of specific material fact. *See* supra n.2 (allegations of post-claim conduct).

To the extent that Plaintiffs' misrepresentation/negligence claims involves promises regarding the future performance of the policy, such claims cannot lie. To establish a claim of misrepresentation, Plaintiffs must show that the non-diverse Defendants made an actionable "material misrepresentation," knowing that it was false, or acting with reckless disregard for the truth. *Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 197 (Okla. Civ. App. 2000). To be actionable, a misrepresentation "must be regarding existing facts and not . . . future events." *Hall v. Edge*, 782 P.2d 122, 128 n. 4 (Okla.1989). Although statements concerning future events may be actionable if they "involved a matter peculiarly within the speaker's knowledge," *see id.* at 128, such is not the case here, because the amount of Plaintiffs' dwelling extension that would be implicated in a tornadic loss six years after the policy's inception would not have been "peculiarly within the speaker's knowledge," and Plaintiffs cannot reasonably be said to have "relied" on such statements. In short, "[a]n action for fraud may not be predicated on false statements when the allegedly defrauded party could have ascertained the truth with reasonable diligence." *Bankers Trust Co. v. Brown*, 107 P.3d 609, 614 (Okla. Civ. App. 2004) (quoting *Silver v. Slusher*, 770 P.2d 878, 881 (Okla.1988)).

15. State Farm files contemporaneously herewith all pleadings or other documents on file in the State Court matter, including a copy of the Court's docket sheet, attached hereto as Exhibit 6, with the exception of the Plaintiffs' Complaint attached hereto as Exhibit 1, and the Summons served upon State Farm and Stout are attached hereto as Exhibit 2.

WHEREFORE, PREMISES CONSIDERED, STATE FARM FIRE AND CASUALTY COMPANY, Defendant, pursuant to and in conformity with the requirements set forth in 28 U.S.C. § 1446, removes *Nathaniel Neill and Alicia Neill v. State Farm Fire and Casualty Company and Jack Stout*, Case No. CJ-2012-109, In the District Court of Woodward County, State of Oklahoma, on this, the 14th day of June, 2013.

Respectfully submitted,

By  /s/Benjamin G. Kemble
David V. Jones, OBA #19611
Benjamin G. Kemble, OBA #21006
21 E. Main St., Suite 101
Oklahoma City, Oklahoma 73104
Telephone: (405) 601-8713
Facsimile: (405) 232-8330
**ATTORNEYS FOR DEFENDANTS,
STATE FARM FIRE AND
CASUALTY COMPANY AND JACK STOUT**

**OF COUNSEL:
JONES, ANDREWS & ORTIZ, P.C.**

## CERTIFICATE OF SERVICE

    I hereby certify that on this the 14th day of June, 2013, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrant:

Mr. Jeff D. Marr
MARR LAW FIRM
4301 Southwest Third Street, Suite 110
Oklahoma City, OK  73108

Mr. Jay M. Mitchel
MITCHEL, GASTON, RIFFEL & RIFFEL
P.O. Box 887
Woodward, OK 73802

Mr. Aaron R. Sims
SIMS, PRICE & PRICE, PLLC
PO Box 1086
1517 Main Street
Woodward, OK  73802

                                            /s/Benjamin G. Kemble
                                            Benjamin G. Kemble