IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

NATHANIEL NEILL and ALICIA NEILL, )
)
        Plaintiffs, )
)
v. ) Case No. CIV-13-627-D
)
STATE FARM FIRE AND CASUALTY )
COMPANY, *et al.*, )
)
        Defendants. )

# **O R D E R**

This matter comes before the Court for consideration of Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. No. 68], filed pursuant to Fed. R. Civ. P. 56. After a substantial period of time for discovery, Plaintiffs Nathaniel and Alicia Neill have responded to the Motion.[1] For the most part, Plaintiffs oppose the Motion, which is fully briefed and ripe for decision.

Plaintiffs commenced this action in the District Court of Woodward County, Oklahoma, regarding an insured loss resulting from a tornado. Following removal to federal court, the case has proceeded under Plaintiffs' state court petition asserting claims for breach of contract, insurer's bad faith, negligence of the insurer's agent in procurement of Plaintiffs' homeowner's insurance policy, negligent misrepresentation and constructive fraud by the

---

[1] An early motion for summary judgment was denied as premature pursuant to Rule 56(d). *See* Order of Dec. 12, 2014 [Doc. No. 51]. The instant motion was filed after the time period for discovery had exceeded one year, and Plaintiffs were allowed more than 80 days to respond to it. *See* Order of June 5, 2015 [Doc. No. 92] (denying further relief under Rule 56(d) and ordering response within 21 days).

agent regarding the policy, negligent underwriting, breach of fiduciary duty, and injunctive relief from the continued issuance of insurance policies in Oklahoma. In removing the case, Defendant State Farm Fire and Casualty Company ("State Farm") invoked federal diversity jurisdiction based on diverse citizenship between Plaintiffs and State Farm, and allegations of fraudulent joinder of Defendant Jack Stout, a nondiverse State Farm agent. Plaintiffs unsuccessfully moved to remand the case, and Mr. Stout was dismissed as a party who had been fraudulently joined to defeat diversity and prevent removal. *See* Order of Jan. 21, 2014 [Doc. No. 11].

State Farm now seeks summary judgment in its favor on all claims. As to Plaintiffs' claims for damages under tort theories other than insurer's bad faith, State Farm asserts that Plaintiffs seek to impose vicarious liability for the alleged wrongful conduct of its agent, Mr. Stout, and that the Court's fraudulent joinder ruling is dispositive of these claims. Alternatively, State Farm asserts that the claims lack merit. State Farm contends Plaintiffs' claim for injunctive relief fails because they have an adequate remedy at law. As to Plaintiffs' contract and bad faith claims, State Farm asserts that the undisputed facts establish Plaintiffs are not entitled to any relief or, at least, there was a legitimate dispute concerning the scope of Plaintiffs' loss that precludes a finding of bad faith conduct.[2]

---

[2] In a footnote, State Farm also "prays this Court eliminate punitive damages as an element of this case." *See* Def.'s Mot. Summ. J. [Doc. No. 68] p.2, n.1. State Farm presents no argument or authority to support the proposition that it is entitled to a ruling on punitive damages, other than a conclusory statement within the footnote. The Court finds this statement to be insufficient to present for decision a separate issue of Plaintiffs' possible recovery of punitive damages (apart from the issue of whether they can recover tort damages).

Plaintiffs deny that all relevant facts are undisputed or that summary judgment is proper on their breach of contract and bad faith claims. As to other tort claims, however, Plaintiffs contend these claims "are not before the Court" due to Mr. Stout's dismissal from the case. *See* Pls.' Resp. Br. [Doc. No. 101], p.29. Plaintiffs argue that because Mr. Stout's conduct forms the basis of the claims, he is a necessary party for their adjudication under Oklahoma law. *Id*. (citing *Sisk v. J.B. Hunt Transport, Inc.*, 81 P.3d 55, 58 (Okla. 2003), to argue that "a claim for vicarious liability is dependent on the agent Stout being a party to this action").[3] Plaintiffs make no response to State Farm's alternative contention that the claims lack merit. As to the claim for injunctive relief asserted as the "Seventh Cause of Action" in their pleading, Plaintiffs state that the claim was abandoned long ago and, "so the record is clear," they "have no intention of pursuing injunctive relief as a remedy in this action, rendering [State Farm's] request for judgment on the merits on this claim moot." *Id*.

**Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute

---

[3] Shortly before filing their response brief, Plaintiffs filed a motion for leave to amend their pleading to add Mr. Stout as a party and assert against him some of the previously dismissed claims. Accordingly, Plaintiffs also argue in their brief that a ruling on the merits of the claims would be "premature." *See* Pls.' Resp. Br. [Doc. No. 101], p.30. In the interim, however, the Court denied Plaintiffs' motion, and Plaintiffs have not asked to supplement their summary judgment response. *See* Order of Aug. 3, 2015 [Doc. No. 109].

3

is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*. If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Statement of Undisputed Facts**[4]

In April 2012, Plaintiffs' residence in Woodward, Oklahoma, was insured under a homeowner's insurance policy issued by State Farm. The policy provided coverage limits for the dwelling of $97,900 and a dwelling extension up to $9,790, and personal property coverage of $73,425.[5] Under a replacement cost provision of the policy, Plaintiffs were entitled to payment for the cost to repair or replace the premises only upon completion of the repair or replacement; until that time, they were entitled to receive the actual cash value of the damaged part of the property at the time of the loss. Plaintiffs affirmatively state in their summary judgment response that they do not challenge "the two-step process" of replacement cost payment. *See* Pl.'s Resp. Br. [Doc. No. 101], pp.3,15.

Plaintiffs reported a loss claim to State Farm on April 16, 2012, shortly after a tornado hit Woodward and damaged their home. A State Farm representative, Floyd Lemons, made an initial visit to the property the same day. Although Plaintiffs dispute Mr. Lemons' characterization, he noted "moderate damage" to the house, with broken windows, glass in the carpets, holes in the roof from debris, and temporary repairs made by Plaintiffs. *See* Def.'s Mot. Summ. J., Ex. 2 [Doc. No. 68-4], p.7 (ECF page numbering) (hereafter, "Claim

---

[4] This statement includes material facts that are properly supported by the asserting party and not opposed in the manner required by Rule 56(c). It should be noted that Plaintiffs responded to State Farm's statement of facts by opposing almost every paragraph with a narrative statement, accompanied by citations to multiple pages of deposition testimony (usually their own). Similarly, a seven-page narrative with string citations to the record is presented as Plaintiffs' statement of facts. This briefing practice is largely an effort by Plaintiffs' counsel to argue inferences that might be drawn from the record and is not helpful to the Court.

[5] Although State Farm states different policy limits in its brief, the referenced policy contains the coverage amounts stated by the Court, and State Farm confirms these amounts in its reply brief. *See* Def.'s Mot. Summ. J., Ex. 1 [Doc. No. 68-3], p.2 (ECF page numbering); Def.'s Reply Br. [Doc. No. 102], p.10.

Notes").[6]  Plaintiffs considered the house to be unsafe for their family with two young children and a pregnant mother. A claim representative for State Farm, Kevin McClure, spoke with Mr. Neill on April 20, 2012, and scheduled an inspection the next day. During the initial conversation, Mr. Neill expressed concern about the broken glass, damage to the roof and siding, and "[s]ome walls appear[ed] to have moved." *Id*.

Mr. McClure performed his inspection of Plaintiffs' residence with them present on April 21, 2012. Regarding the outside of the house, Mr. McClure found the roof needed to be replaced and there was damage to siding, brick veneer, windows, doors, gutters, fascia, soffit, light fixtures, and a heating and air conditioning unit. He documented: "Glass and insulation [were] blown in three different rooms," and seen in the carpet of the den, living room, and a child's bedroom. *See id*. p.7. He also stated: "Many rooms have nails that popped through the blown acoustic in the ceiling. The south wall in [a bedroom] was impacted by flying debris and the nails in the south wall popped through the sheetrock up to a 1/4 of an inch." *Id*. He noted that hidden damage to the wall could be revealed during the replacement of siding on the exterior of the wall.

Mr. McClure observed damage to a chain link fence and concrete footing, stating: "[T]he fence is bent and damaged in most areas, the footing has been up rooted by a tree in one area and chipped and cracked from flying debris in most areas." *Id*. He noted damage to a shed that was "older" and "in disrepair," but would need a new roof. *Id*. He also noted

---

[6] The same notes appear in the record as an exhibit submitted by Plaintiffs. *See* Pls.' Resp. Br., Ex. 3 [Doc. No. 101-3], p.8 (ECF page numbering). The Court will use only the first record citation.

that Plaintiffs had listed losses of personal property and contents, including the refrigerator, furniture, clothes, bedding, food, a gas grill, and a trampoline. Mr. McClure advanced $2,000.00 for damage to contents, with the understanding that Plaintiffs would complete inventory forms. Regarding additional living expenses ("ALE"), Mr. McClure noted that Plaintiffs had no power for two days, their house lost windows and had roof damage, and "[t]hey were not allowed back in the area. They will have some expenses for meals out." *Id*. p.6.

Several days later, Mr. McClure completed an estimate for repairs to the house and other structures based on his inspection. He determined the replacement cost value of the dwelling loss was $23,461.94 and the dwelling extension loss was $13,152.56, for a total amount of $36,614.50. After deducting depreciation and a policy deductible on the dwelling extension, Mr. McClure calculated the actual cash value to be paid was $28,411.03, consisting of $18,576.54 on the dwelling claim and $9,834.49 on the dwelling extension claim. He discussed his estimate with Plaintiffs on April 29, 2012, and tendered payment in the amount of $28,411.03.

Plaintiffs did not utilize this payment to replace the roof or repair the property damage caused by the tornado. Before filing suit in November 2012, Plaintiffs did not obtain a second estimate of the cost to repair the tornado damage.[7] Plaintiffs present facts to show,

---

[7] During the litigation, Plaintiffs have identified a witness, J.P. Shirkey, who is a building contractor in Woodward. In opposition to summary judgment, Plaintiffs have submitted Mr. Shirkey's affidavit and a written proposal to repair their house. He estimates the work to be done would cost $102,450.00.
(continued...)

7

however, that Mr. McClure's inspection was incomplete and the calculations used to prepare his damage estimate undervalued the loss.[8] Also, Mr. Neill testified that no contractor was available or willing to undertake the work following the storm. According to Mr. Neill, he considered doing the work himself but concluded it could not be done with the amount of State Farm's payment, particularly after he learned the mortgage lien holder (which was a joint payee of the check) would withhold a percentage of the payment.

Plaintiffs did engage a plumbing contractor to repair a leaking gas line to a hot water heater; a claim for this work was submitted to State Farm and processed separately.[9] Plaintiffs also replaced seven windows and submitted the receipts to State Farm. Although Mr. McClure only listed two windows for replacement, a subsequent claims representative, Craig Younginger, found Plaintiffs' information was consistent with the damage originally noted and revised Mr. McClure's estimate to include additional windows. It is unclear whether State Farm issued an additional payment to account for this change. Plaintiffs also

---

[7](...continued)
However, his proposal is dated March 20, 2015 (almost three years after the tornado), and he lists repairs that have no apparent connection to the wind damage covered by the policy (such as mold in the bathroom walls).

[8] For the most part, Plaintiffs challenge the thoroughness of Mr. McClure's inspection and the accuracy of his calculations based on their own beliefs regarding the extent of the damage – pointing out, for example, that he did not determine if any walls had moved by testing for level or plumb and that he did not enter the attic to assess the structural integrity of the roof or determine whether insulation needed to be replaced. But when questioned about his inspection notes and estimate during his deposition, Mr. McClure could not explain some apparent inconsistencies or omissions (such as allowing content manipulation in only one room and not replacing ceiling or attic insulation).

[9] Plaintiffs argue that this payment was unreasonably delayed. The record shows, however, that the plumbing contractor completed its work in May 2012. Plaintiffs submitted the invoices to State Farm in late July or early August 2012. State Farm investigated a question regarding code compliance work, and issued full payment for the plumbing repairs on October 9, 2012.

submitted the necessary papers to adjust their claim for personal property or contents coverage, and State Farm subsequently paid this part of the loss. Plaintiffs do not assert in this lawsuit any claim regarding personal property coverage.

Plaintiffs did not submit any ALE receipts. Mr. Younginger initially treated ALE coverage as a pending item based on Mr. McClure's notes regarding Plaintiffs' displacement from the home. But Mr. Younginger subsequently informed Plaintiffs that they were not entitled to ALE coverage because it only applies if a home is uninhabitable and Mr. McClure had determined Plaintiffs' residence was inhabitable despite the damage. In Mr. McClure's view, Plaintiffs needed only to remove the glass-filled carpet to make the home safe and livable, and they could have done this themselves in "a couple of hours." *See* McClure dep. 15:17-23. Notably, his estimate provided for carpet removal in the rooms affected by broken glass, including 4.21 hours of work by a carpet "demolition laborer." *See* Def.'s Mot. Summ. J., Ex. 3 [Doc. No. 68-5], pp.10, 13, 16, 32.[10]

## Discussion

### A. Breach of Contract Claim

Plaintiffs claim State Farm breached the insurance contract by denying them benefits to which they were entitled under the homeowner's policy. State Farm contends Plaintiffs cannot establish a breach of contract because the amount it offered to pay in settlement of Plaintiffs' claim provided full compensation for their loss as a result of the tornado. This

---

[10] The estimate provided for carpet or floor cleaning and carpet deodorization in other rooms.

contention assumes State Farm's valuation of Plaintiffs' loss for dwelling coverage is correct.[11] Plaintiffs have demonstrated, however, that a genuine dispute of material fact exists regarding this loss. Therefore, the Court finds summary judgment is inappropriate on Plaintiffs' breach of contract claim.

**B.     Bad Faith Claim**

Plaintiffs claim State Farm failed to conduct a reasonable investigation and adjustment of their insurance claim, resulting in the denial of contractual benefits.[12] State Farm contends Plaintiffs cannot establish bad faith because it paid their claim in a timely manner and they filed suit without any evidence that the scope or cost of repairs exceeded State Farm's estimate. State Farm argues that Plaintiffs' theory of inadequate investigation fails because they lack evidence State Farm overlooked important facts and that a more thorough investigation would have produced relevant information. State Farms' final argument, articulated in its reply brief, is that any disagreement between the parties regarding the extent of Plaintiffs' loss or their entitlement to ALE coverage is a legitimate dispute and will not support tort liability. *See* Def.'s Reply Br. [Doc. No. 102], pp.9-10.

---

[11] Plaintiffs do not contest the amount paid by State Farm for their loss of personal property. The summary judgment record also makes clear that Plaintiffs' loss under dwelling extension coverage exceeded the policy limit, Plaintiffs were paid the actual cash value of that loss, they did not repair the structures covered as a dwelling extension, and they have offered no facts to show State Farm undervalued this part of the loss or breached its obligation to pay benefits for dwelling extension coverage.

[12] Much of Plaintiffs' argument in their brief regarding bad faith misstates or unfairly exaggerates the factual record and is disregarded.

Under Oklahoma law, State Farm had an "'implied-in-law duty to act in good faith and deal fairly with the insured to ensure that the policy benefits are received.'" *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005) (quoting *Christian v. Am. Home Assur. Co.*, 577 P.2d 899, 901 (Okla. 1977)). "[A]n insurer's right to resist payment or resort to a judicial forum to resolve a legitimate dispute" is well-established. *Gov't Employees Ins. Co. v. Quine*, 264 P.3d 1245, 1249 (Okla. 2011); *see Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 725 (Okla. 2009); *Brown v. Patel*, 157 P.3d 117, 126-27 (Okla. 2007). In reaching a coverage position, however, "the insurer must conduct an investigation reasonably appropriate under the circumstances." *See Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1991); *accord Newport v. USAA*, 11 P.3d 190, 195 (Okla. 2000). An insurer's duty "to timely and properly investigate an insurance claim is intrinsic to an insurer's contractual duty to timely pay a valid claim." *Brown*, 157 P.3d at 122 (emphasis omitted). "[I]f there is conflicting evidence from which different inferences may be drawn regarding the reasonableness of [an] insurer's conduct, then what is reasonable is always a question to be determined by the trier of fact by a consideration of the circumstances in each case." *McCorkle v. Great Atlantic Ins. Co.*, 637 P.2d 583, 587 (Okla. 1981).

Upon consideration of the summary judgment record, viewed in the light most favorable to Plaintiffs, the Court finds that a genuine dispute of material facts precludes summary judgment on the issue of bad faith conduct. Regardless whether the Court would reach the same conclusions, Plaintiffs have presented minimally sufficient facts from which

reasonable jurors could find that State Farm did not conduct an investigation and assessment of the damage to Plaintiffs' home that was appropriate under the circumstances.

Plaintiffs experienced a catastrophic loss on April 15, 2012.[13] Although a State Farm representative arrived quickly, the only actions he took were making notes and handing out forms. Days later, a second representative came and inventoried the damage, and similarly took no action other than making notes and advancing a payment for personal property losses, like a refrigerator, furniture, clothing, bedding, and food. Plaintiffs were left to live in a home with missing windows, holes in the roof, living-area carpets filled with broken glass and insulation, detached kitchen cabinets, and a leaking gas line.[14] State Farm determined these conditions did not render the house "uninhabitable" and Plaintiffs could continue to live there. Plaintiffs have presented facts to show, on the other hand, that they were required to live in unsafe conditions.

Although the term "uninhabitable" is undefined by the insurance policy or relevant case law, research reveals that some jurisdictions consider a premises to be uninhabitable "if individuals are unable to live in a house because it lacks structural integrity or has sustained sufficient structural damage." *See Rice v. Allstate Ins. Co.*, No. CV 10-122-M-DWM, 2012 WL 1831114, *2 (D. Mont. May 18, 2012) (citing cases). "Other jurisdictions have adopted

---

[13] The catastrophic nature of the April 15, 2012 Woodward tornado is a matter of public record. *See* National Weather Service, "Information About the April 14-15, 2012 Great Plains Severe Weather Outbreak," http://www.srh.noaa.gov/oun/?n=events-20120414 (last visited Aug. 12, 2016).

[14] The need for gas line repair was included in Mr. McClure's notes and later estimate. *See* Def.'s Mot. Summ. J., Ex. 3 [Doc. No. 68-5], p.8.

12

a more expansive definition, finding that structurally sound buildings may be uninhabitable if a condition exists that threatens the health or safety of the occupants." *Id*. (citing cases). The Oklahoma Supreme Court has adopted the broader view for purposes of a vendor's implied warranty of habitability. *See Jeanguneat v. Jackie Hames Const. Co*., 576 P.2d 761, 764-65 (Okla. 1978) (water from well drilled by builder-vendor of house was unfit for human consumption and breached warranty of habitability). The question of whether the standard of habitability is met in a particular case is one of fact. *Id*. at 764.

On the record presented in this case, reasonable minds could differ regarding whether Mr. McClure undertook a reasonable investigation and made a reasonable determination of the habitability of Plaintiffs' house immediately after the tornado. By his own account, at a minimum, glass-filled carpet in the living areas needed to be removed before the house would be safe to live in. He included this work, and other work bearing on safety of the dwelling, in the structural damage estimate that Plaintiffs received two weeks after the tornado loss occurred. Yet, to live safely in the house while waiting for State Farm's damage estimate and payment for the work, Plaintiffs needed to have already done the work, according to Mr. McClure. In short, the reasonableness of State Farm's conduct to ensure that Plaintiffs received the benefits of their homeowner's insurance under the circumstances of their loss is reasonably subject to different conclusions.

Therefore, the Court finds that Plaintiffs have demonstrated a genuine dispute of material fact regarding their bad faith claim, and that State Farm is not entitled summary judgment on this claim.

## C. Other Tort Claims

Plaintiffs assert as the Third, Fourth, Fifth and Sixth Causes of Action in their petition, common law tort claims based on the alleged conduct and misrepresentations of Mr. Stout as State Farm's agent, and unspecified conduct of State Farm, in underwriting Plaintiffs' insurance policy and determining the replacement cost value of their home. Plaintiffs identify their tort theories as "Negligence in the Procurement of Insurance" (Petition, p.5); "Constructive Fraud and Negligent Misrepresentation" (*id*. p.7); "Negligent Underwriting" (*id*. p.9); and "Breach of Fiduciary Duty" (*id*. p.11). State Farm contends Plaintiffs rely on the same factual basis to support these claims against both State Farm and Mr. Stout, and the Court's dismissal of Mr. Stout under the doctrine of fraudulent joinder is dispositive. State Farm further contends that, accepting as true Plaintiffs' factual allegations to support these claims and their deposition testimony that resulted in the dismissal of Mr. Stout, Plaintiffs cannot prevail on any of these tort theories as a matter of Oklahoma law.

Plaintiffs disagree with only the first argument. They do not dispute State Farm's assertion that the claims fail as a matter of law on the alleged facts and evidence presented, nor do Plaintiffs present any additional facts that are alleged to be relevant to these claims. Plaintiffs' response to the Motion makes clear that they seek to hold State Farm liable under

14

tort theories other than bad faith based solely on State Farm's vicarious liability for the conduct of its agent, Mr. Stout. For the reasons previously stated in the context of finding Mr. Stout was fraudulent joined (*see* Order of Jan. 21, 2014 [Doc. No. 11], pp.6-7), the Court finds that State Farm is entitled to a judgment as a matter of law on these claims unless, as argued by Plaintiffs, the claims cannot be adjudicated in Mr. Stout's absence.

The case authority cited by Plaintiffs holds only that, where a claim rests on a principal's vicarious liability for an agent's conduct, the plaintiff's release of the agent, or other affirmative act that extinguishes the claim against the agent, operates as a release of the principal as well. *See Sisk*, 81 P.3d at 58-59. Plaintiffs cite no authority, and the Court is aware of none, holding that the agent is a necessary party to an action against the principal. To the contrary, a principal may be held vicariously liable for the torts of its agent even though the agent is personally immune from suit. *See Hooper ex rel. Hooper v. Clements Food Co.*, 694 P.2d 943, 944-45 (Okla. 1985).[15] Any contention that Plaintiffs will somehow be prejudiced by Mr. Stout's absence from this case as a party is unfounded. As State Farm correctly points out, the Court previously ruled that Plaintiffs could depose Mr. Stout, and they took his deposition long before State Farm's Motion was filed. *See* Order of Oct. 17, 2014 [Doc. No. 32] (denying State Farm's motion for protective order to prevent Mr. Stout's deposition); *see also* Order of Aug. 3, 2015 [Doc. No. 109], p.5 (denying Plaintiffs' motion

---

[15] Of course, "a suit against the employer based on *respondeat superior* bars a later suit against the employee if the later suit is based on the same set of facts as the earlier suit." *Neely v. First State Bank*, 975 P.2d 435, 438 (Okla. 1998).

to reassert claims against Mr. Stout, in part, due to delay filing the motion; noting Mr. Stout's deposition was taken December 4, 2014).

If Plaintiffs wished to oppose State Farm's Motion based on new or additional facts learned during discovery regarding Mr. Stout's conduct or State Farm's underwriting practices, they clearly could have done so. With their response brief, Plaintiffs have submitted portions of Mr. Stout's deposition transcript, and rely on it to oppose summary judgment on their bad faith claim. *See* Pl.'s Resp. Br. [Doc. No. 101], pp.26-27; *id*. Ex. 11 [Doc. No. 101-11]. However, Plaintiffs present no argument, properly supported assertions of fact, or legal authority to support any other tort claim. Therefore, the Court finds that State Farm is entitled to summary judgment on Plaintiffs' Third, Fourth, Fifth and Sixth Causes of Action.

**D.     Injunctive Relief**

Plaintiffs assert as the "Seventh Cause of Action" in their pleading that they are entitled to an injunction prohibiting State Farm from issuing property insurance policies in Oklahoma and annually increasing policy limits and premiums. *See* Petition [Doc. No. 1-2], p.12. Although not entirely clear, this assertion appears to be based on factual allegations of the petition designed to show that State Farm engaged in negligent or fraudulent underwriting and property valuation practices. Without clarifying the basis of the request for an injunction, Plaintiffs have responded to State Farm's Motion by affirmatively declaring this claim is abandoned and arguing this aspect of the Motion is "moot." *See* Pls.' Resp. Br.

[Doc. No. 101], p.29. State Farm maintains the claim is not moot unless it is voluntarily dismissed or adjudicated. *See* Reply Br. [Doc. No. 102], p.1, n.1.

The parties appear to view Plaintiffs' request for an injunction as a claim for relief. "But however they are pleaded, different remedial requests do not make for different claims." *CPS Transp., LLC v. Sloan*, 611 F. App'x 931, 933 (10th Cir. 2015) (unpublished);[16] *see also Renfro v. City of Bartlesville*, No. 12-CV-208-GKF-PJC, 2012 WL 5996376, (N.D. Okla. Nov. 30, 2012) (plaintiff's claim for injunctive relief was not substantive claim). Thus, regardless of which party is right, the Court cannot grant summary judgment on an injunction "claim." Rule 56 does, however, authorize the Court to resolve discrete issues and to "enter an order stating any material fact – including an item of damages or other relief – that is not genuinely in dispute." *See* Fed. R. Civ. P. 56(g). Because Plaintiffs have abandoned their request for an injunction, the Court can declare that injunctive relief is no longer in dispute. Therefore, to this extent, State Farm is entitled to a summary adjudication of Plaintiffs' Seventh Cause of Action.

**Conclusion**

For these reasons, the Court finds that State Farm is entitled to summary judgment on all claims except Plaintiffs' breach of contract claim and claim of insurer's bad faith, as to which Plaintiffs have sufficiently demonstrated that a genuine dispute of material fact exists.

---

[16] Cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1.

IT IS THEREFORE ORDERED that Defendant State Farm Fire and Casualty Company's Motion for Summary Judgment [Doc. No. 68] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 16th day of August, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE